McReynolds v. Grubb.

AMERICA McReynolds et al. v. Rhoda C. Grubb, Appellant.

Division Two, June 6, 1899.

1. Conveyances: DELIVERY: PLEADING. An allegation in a petition that a deed was executed and recorded is equivalent to an allegation that it was delivered.

2. ———: ———: EXECUTION AND RECORD. Where a deed has been executed and recorded, no formal delivery is necessary, as under such circumstances the law will presume a delivery.

3. ———: MARRIED WOMEN: INHERITED LANDS: LEGAL ESTATE: MIS-DESCRIPTION IN DEED: EQUITABLE RELIEF. Land acquired by a woman after her marriage by inheritance from her father prior to the enactment of section 6864, Revised Statutes 1889, did not become her separate property, and could only have been conveyed by her and her husband jointly. And a deed executed by both, which does not describe the land intended to be conveyed, but land that belonged to neither, conveys no title legal or equitable. Nor can the description in such deed, although she has received and enjoys the consideration therefor, be corrected by a proceeding in a court of equity, since such a proceeding can be maintained only against a party competent to contract, and such married woman had no power to contract concerning such land.

4. ———: ———: ———: ADOPTION. But such a deed being void may be affirmed by her after she becomes discovert, but it must be done in writing and in the form prescribed by law. Her assent to it after coverture, or her parol adoption of it, or her expressions of a willingness to make it valid or to make a new deed, do not make it valid. To have such effect it must be re-acknowledged and delivered.

5. ———: ———: ———: JUDGMENT FOR POSSESSION. But where a suit has been brought against her to reform such deed she can not in that suit recover possession of the land.

6. ———: ———: ———: REMEDY: ESTOPPEL. The remedy of the grantees in such case, if they are in possession, will be, when she brings suit in ejectment (or at their suit to quiet title), that by reason of the fact that she has received the agreed consideration for her interest in the land and having settled with the grantee on that theory, and having stood by and seen them making lasting improvements thereon, she is estopped from a recovery.

*Appeal from Jasper Circuit Court.*—HON. E. C. CROW, Judge.

REVERSED.

HARRISON & HARRISON for appellant.

(1) Rhoda C. Grubb being the wife of Joel Grubb, and having acquired title to her three-elevenths interest in the west half of the southeast quarter of section seventeen by inheritance from her father, and her husband Joel Grubb having purchased eight-elevenths of said land from other heirs, and by partition it having been set off to them, her interest was her legal estate, as pleaded in plaintiffs' petition, certainly not her separate estate and would not operate as her separate estate unless she should have inherited it after November 1, 1889, on which day the Revised Statutes of 1889 of Missouri went into effect. See section 6614, and the section making it her separate estate is section 6869. (2) Prior to 1889, a married woman in this State could not convey her legal estate in lands except by deed in which her husband joined, executed and acknowledged in accordance with the requirements of the statutes; nor could she make a valid contract for the sale of such estate, or bind the same in law. Brown v. Dressler, 125 Mo. 592. (3) This was her legal estate and the deed did not describe the northwest quarter of the southeast quarter of section 17. No title, whatever, passed to her interest in this land by the deed to the northeast quarter of the southeast quarter of said section. She could have no agent to compromise her rights. She was merely invested with a fee, and could only be divested thereof in the mode expressly provided therefor by statute, to wit, by a deed executed conjointly with her husband; and aside from that way, a *feme covert* is utterly incapable of binding herself by a contract to convey her land either in

law or in equity. An attempted contract on her part is not such compliance nor is her disappointed intention to convey clothed with those forms. Shroyer v. Nickell, 55 Mo. 264; Hord v. Taubman, 79 Mo. 101; Atkinson v. Henry, 80 Mo. 151; Mier v. Bloom, 80 Mo. 184; Muller v. Kaissaman, 84 Mo. 323; Givin v. Smurr, 101 Mo. 552; Throckmorton v. Pence, 121 Mo. 50. (4) There was no delivery of this deed to Jacob Grubb, the grantor of the plaintiffs, by Joel Grubb, and until delivery there could be no acceptance. There was no consideration for the deed, although the plaintiffs' brother Jacob Grubb holds the very land his father deeded him, and after his death compelled his widow to give up his note for $500 the consideration therefor. As the delivery of the deed was essential to the transfer of the title, it is the final act without which all other informalities are insufficient. The grantor must part with the deed and all right of dominion over it, intending that it shall operate as a conveyance, and the grantee must accept it. Hall v. Hall, 107 Mo. 107; Cravens v. Rossiter, 116 Mo. 338. The deed was recorded by the grantor, the purchase price was never paid, the note for which was taken from the widow after the grantor's death, and it was recorded without the grantee's knowledge or assent. There was, therefore, no delivery of this deed, it was yet in the hands of the grantor's widow and produced in court by her on notice from plaintiff. Cravens v. Rassiter, 116 Mo. 344. (5) The plaintiffs' grantees had notice of all the facts. They were present aiding and assisting him to get up the note, the consideration for the deed, and also notice of the record title; and then apparently for their services he deeds the land belonging to the widow to the plaintiffs (his two sisters) who are allowed over the objection of the defendant to testify what Joel Grubb intended to convey. This was error. Moire v. Bloom, 80 Mo. 179; R. S. 1889, sec. 1918; O'Bryan v. Allen, 108 Mo. 231; Messimer v. McCrary, 113 Mo. 387. (6) Having the title and possession of the

forty acres while her husband lived, paying the taxes, and the five children having forcibly taken possession thereof, the widow is entitled to affirmative relief, even to the awarding of a writ of possession. Brunt v. Sprat, 113 Mo. 48; Morrison v. Harrington, 120 Mo. 668; Swope v. Weller, 119 Mo. 555.

McReynolds & Halliburton for respondents.

(1) A married woman, as to her separate property, is *feme sole* and able to contract and be contracted with and is capable of being estopped, and binding herself to convey land. Leete v. State Bank, 115 Mo. 203; Henry v. Sneed, 99 Mo. 425; Brown v. Dressler, 125 Mo. 595. (a) The contract between Joel Grubb and defendant, Rhoda Grubb, by which the land in controversy was to be conveyed (and attempted to be conveyed) to Jacob Grubb for the benefit of Joel Grubb's five children by his first wife and his home place conveyed to defendant, Rhoda Grubb, is binding in equity, especially where she received the consideration, to wit, the home place, and retains it. Tennison v. Tennison, 46 Mo. 81; Terry, Trustee, v. Wilson, 63 Mo. 500; Halferty v. Scarce, 135 Mo. 128. (b) And coverture will not be allowed to operate as a sword instead of a shield. Barrum v. Bobb, 68 Mo. 626. (3) A married woman after becoming discovert may affirm an executory contract made during coverture and it will be mutual and binding, and may affirm and ratify a deed. Walker v. Owen, 79 Mo. 571; Boatman v. Curry, 25 Mo. 433; Price v. Hart, 29 Mo. 171. (4) Defendant is not entitled to recover possession in this proceeding for two reasons: First, the plaintiffs hold and own separate and distinct tracts of land, and Mrs. Montague's part of the land was in possession of a tenant. Oak Life Ins. Co. v. Cummings, 90 Mo. 267; Shaw v. Tracy, 95 Mo. 531; Second, the defendant, having received the purchase price of this land in the trade with her husband, it should be

adjusted and declared a lien on her interest of the land. Atkinson v. Henry, 80 Mo. 155. (5) Defendant having received from her husband the agreed consideration for her interest in this land; and having ratified the deed as intended to have been made, and settling with the heirs, and having stood by and seen plaintiffs buy and pay for their brother's interest therein, take possession of same, divide it and make lasting and valuable improvements thereon for years is estopped from now claiming this land, or any part of it. Ins. Co. v. Rosenheim, 56 Mo. App. 36; Austin v. Loring, 63 Mo. 19; Green v. Railroad, 82 Mo. 653; Combs v. Sullivan Co., 105 Mo. 230; St. Louis v. Davidson, 102 Mo. 149; Clayburn v. McLaughlin, 106 Mo. 521; Highly v. Barron, 49 Mo. 103; Sweeney v. Mallory, 62 Mo. 485. (6) The deed to Jacob Grubb was delivered. It was signed and acknowledged in his presence, and Joel Grubb afterwards placed it on record. No particular form or ceremony is essential to constitute a delivery; it may be by words or acts or both. Crowder v. Searcy, 103 Mo. 97; Tyler v. Hall, 106 Mo. 313; Rumsey v. Otis, 133 Mo. 85; Tobias v. Bass, 85 Mo. 654. The delivery need not be made to the grantee in person. Sneathem v. Sneathem, 104 Mo. 201. And where it is beneficial to grantee (except when made in payment of a debt) acceptance will be presumed. Cravens v. Rossiter, 116 Mo. 338.

BURGESS, J.—This suit was instituted in the circuit court of Jasper county by plaintiffs against the defendant, for the purpose of having corrected a deed executed by defendant and her husband Joel Grubb, in his lifetime, to Jacob Grubb, by which they attempted to convey to him a certain tract of land in said county, to wit, twenty-six and one-half acres a part of the northeast quarter of the southeast quarter of section nine in township twenty-seven, and the northwest quarter of the southeast quarter of section seventeen in township twenty-seven of range thirty-one, except three-fourths of an acre in the southwest corner, but by

the mistake of the scrivener, who wrote the deed, as alleged, the land in section seventeen was described as the northeast quarter of the southeast quarter, when it should have been described as the northwest quarter of the southeast quarter of said section seventeen, township and range, except three-fourths of an acre in the southwest corner of said forty acre tract.

The deed was executed on the 9th day of March, 1877. Joel Grubb died in October, 1889. Plaintiffs claim title under Jacob Grubb.

The trial resulted in a judgment and decree in favor of plaintiffs correcting the mistake in the deed. After unsuccessful motion for new trial and in arrest, defendant appeals.

Joel Grubb was married three times. By his first wife he had five children, viz., America McReynolds, Sarah A. Montague, John Grubb and V. H. Grubb, and one by his last wife, the defendant, all of whom were living in March, 1877. At that time he was the owner in fee of the northwest quarter of the southwest quarter of section ten, township twenty-seven, range thirty-one, except two and one-half acres thereof. This was the homestead. He also owned twenty-six and one-half acres a part of the northwest quarter of the southeast quarter of section nine in township twenty-seven of range thirty-one. Joel Grubb and the defendant were the owners of, and had the legal title to the northwest quarter of the southeast quarter of section seventeen, township twenty-seven, of range thirty-one, except three-fourths of an acre in the southwest corner thereof, as tenants in common, Joel Grubb owning three-fourths thereof, and the defendant one-fourth.

In March, 1877 Joel Grubb made an arrangement with defendant, by which it was agreed that they would deed all the land he owned and the land he and she owned to Jacob Grubb, and that said Jacob Grubb should immediately deed

to the defendant, for her and her child, the home place, to wit, northwest quarter of the southwest quarter of said section ten, and it was further agreed that Jacob Grubb was to hold the title to the northwest quarter of the southeast quarter of section seventeen and twenty-six acres in section nine, township twenty-seven, range thirty-one, until the death of said Joel Grubb, when these tracts were to be divided between the five children of Joel Grubb's first wife, and for the purpose of binding Jacob Grubb to make said conveyances, Jacob Grubb executed his note to Joel Grubb for $500 with the agreement and understanding that with the making of said conveyances to his brothers and sisters said note was to be given up and canceled, the only consideration therefor being to bind Jacob Grubb to make the conveyances. In the deed from Joel Grubb and his wife to Jacob Grubb made in pursuance of this arrangement there was a mistake in the description of the land in this, that where they attempted to convey the northwest quarter of the southeast quarter of section seventeen, except three-fourths of an acre in the southwest corner of said quarter, it was described as the northeast quarter of the southeast quarter, a forty to which Joel and Rhoda C. Grubb never at any time had any title. Rhoda C. Grubb acquired her interest in the forty acres in section seventeen as an heir at law of her father, Matthew Payne, and Joel Grubb acquired his interest therein by the purchase of the interest of other heirs in said estate, and in partition of said estate this land was set off to them with other land, which made them respectively own, the defendant one-fourth, and Joel Grubb three-fourths of said eighty.

After the death of Joel Grubb in October, 1889, the five children of the first wife of Joel Grubb went to his residence where the defendant lived, and there talked over the property of the estate and the manner of dividing the same. At that time John Grubb had a chattel mortgage on

all the personal property of Joel Grubb; there was also a note for $100 signed by the defendant, in favor of Joel Grubb. These five heirs and the defendant at that time mutually agreed that John Grubb should deliver up and cancel his chattel mortgage, and the defendant should have all the personal property belonging to the estate of Joel Grubb, and retain the home place, thirty-seven and one-half acres, for herself and minor child; that Jacob Grubb's note for $500 should be delivered to him, and the note of defendant, Rhoda C. Grubb, for $100 should be delivered to her, all of which was done at that time. That the northwest quarter of the southeast quarter of section seventeen, township twenty-seven, range thirty-one, should be deeded to America McReynolds, Sarah A. Montague and V. H. Grubb; that twenty-six acres in section nine should go to John Grubb and Jacob Grubb, and immediately thereafter on October 21, 1889, Jacob Grubb made a deed to America McReynolds and Sarah A. Montague and V. H. Grubb conveying the northwest quarter of the southeast quarter of section seventeen, township twenty-seven, range thirty-one. On the same day America McReynolds and Sarah A. Montague bought of V. H. Grubb his interest in said forty and received a deed therefor, and afterwards by agreement, divided said land between themselves, each taking twenty acres and made deeds March 14, 1891, in accordance therewith. All these deeds conveyed said land by the correct description. America McReynolds and Sarah A. Montague immediately took possession of their respective parts of this forty acres and commenced improving the same, and put thereon lasting and valuable improvements at a considerable expense, with the full knowledge of the defendant, Rhoda C. Grubb. Matters run along in that shape until the fall or winter of 1895, when the defendant commenced making some claims to this forty acres of land and this suit was commenced to correct said deed.

At the close of the evidence the court at the request of plaintiffs found the facts to be as follows:

"1.    That defendant, Rhoda Grubb, owned an interest in the tract of land in controversy as her separate property.

"2.    That it was the intention of Joel Grubb and Rhoda Grubb to convey the northwest quarter of the southeast quarter, except three-fourths of an acre in the southwest corner, instead of the northeast quarter of the southeast quarter, except as described in the deed.

"3.    That defendant, Rhoda Grubb, after the death of Joel Grubb, ratified the deed as intended to have been made by the said Joel Grubb, by her acts and transactions with the children of Joel Grubb by his first wife, and is bound by such ratification."

At the request of defendant the court found the fact to be, as follows:

"1st.    That at the time the deed in controversy was made, Joel Grubb and Rhoda C. Grubb (this defendant) were husband and wife; that Joel Grubb died in October, 1889."

And refused to find:

"2d.    That Joel Grubb and Rhoda C. Grubb were the owners of the west half of the southeast quarter by judgment in partition.

"3.    That the eighty acres were partitioned by parol between Rhoda C. Grubb and Joel Grubb; that afterwards Joel Grubb traded the south forty (his share) with John Warden for the northeast quarter of the southeast quarter. Warden had deeded it direct to Jacob Grubb and also made Jacob Grubb a deed for the northeast quarter of the southeast quarter, including twenty acres of other land, said Jacob Grubb paying him the difference in value in the two forty acres of land, and that there is no evidence showing a mistake made by the parties to the deed.

"4th. That this forty acres was not her separate estate, and there was no agreement made with her to convey this forty acres of land, nor any interest she had in it whatsoever.

"5th. That said deed was a gratuitous grant, and was never delivered to nor accepted by said Jacob Grubb, under whom plaintiffs claim.

"6th. That the land claimed was not her separate property under R. S. 1879, section 3296, which was the law governing the rights of the parties in this case.

"7th. The defendant occupied said northwest quarter of the southeast quarter until nineteen days after his death, October 2d, 1889, to October 21st, 1889, at which time (October 21st, 1889), plaintiffs took possession of said land against the wish and protest of the defendant.

"8th. The court finds from the evidence, that Rhoda C. Grubb (the defendant), was one of the daughters of Matthew Payne; that Matthew Payne departed this life intestate prior to 1872; that the defendant was one of ten heirs of said Payne; that this defendant, at that time, inherited her interest in the forty acres in controversy; that by the partition papers offered in evidence the defendant's said interest and her husband's interest which he has purchased to wit, two shares and two-thirds of one share in said estate, were set off in one tract, it being eighty acres, the west half of the southeast quarter of section seventeen, township twenty-seven, range thirty-one, Jasper county, Missouri; and said interest of the said Rhoda C. Grubb was not her separate estate, but was her legal estate inherited as aforesaid."

It is first insisted by defendant that the petition fails to state a cause of action, in that it does not aver that the deed in question was delivered to Jacob Grubb, and is bad for the further reason that it shows upon its face that plaintiff was a married woman at the time the deed was made in March, 1877.

The petition alleges that on the 9th day of March, 1887, the said Joel Grubb and his wife, the defendant herein, made a warranty deed which is recorded; that on the 21st day of October, 1889, said Jacob Grubb, the grantee therein named, conveyed a part of the land therein described to two of his sisters and one brother. So that the only reasonable construction that can be put upon these allegations is that the deed was delivered to and accepted by the grantee therein named. Moreover, the allegation that the deed was executed and recorded was equivalent to an allegation that it was delivered. No formal delivery was necessary, as the law will presume a delivery under such circumstances. [Kane v. McCown, 55 Mo. 181.]

The next question presented is the vital one in this case, and upon its solution depends the result. Defendant having acquired her interest in the land which it is claimed by plaintiffs was intended to be conveyed by the deed in question by inheritance after her marriage with Joel Grubb, which was prior to the adoption of section 6864, Revised Statutes 1889, it was not her separate property, and could only have been conveyed by her and her husband jointly, and then only by deed signed and acknowledged by them as provided by section 2, p. 934, Revised Statutes 1872. Therefore as the deed does not describe the land intended to be conveyed, as to Mrs. Grubb it passed no title either legal or equitable. But plaintiffs insist that as defendant received in consideration for the land which was intended to be conveyed to Jacob Grubb for the benefit of Joel Grubb's five children by his first wife, a deed to the home place of her and her husband Joel Grubb, and still retains the same, that in equity and good conscience the deed in question should be corrected so as to conform to the intent of the grantors. As the land intended to be conveyed by defendant and her husband by the deed in question, was not her separate property and she could only have conveyed her interest therein in the manner

prescribed by statute, it seems to follow, that a deed defect-
ively executed by her or which does not describe the land
intended to be conveyed can not be corrected by proceeding
in a court of equity.

Such proceeding can only be maintained against a party
competent to contract and the defendant herein possessed
no such power at the time of the execution of the deed.

In Shroyer v. Nickell, 55 Mo. 264, Sherwood, J., speak-
ing for the court said: "The reformation of deeds and of
contracts, whether sealed or otherwise, executed or merely
executory, is one of the most familiar doctrines pertaining
to equity jurisprudence. But it is to be observed of this
power of reforming instruments, that it always has for its
basis the fact that the parties thereto are capable of making
a valid contract. This capability can not be, in general,
affirmed of a married woman. The only exception to this
rule of incapacity, so far at least as it concerns her individual
rights, is where a *feme covert* contracts with regard to her
separate estate; for in respect to that, she is held a *feme
sole* by courts of equity. But beyond this, the original ina-
bility to make a binding contract still exists in all its ancient
vigor, save where modified by statute. It was one of the
fundamentals of common law, that the contract of a *feme
covert* was absolutely void, except where she made a con-
veyance of her estate by deed duly acknowledged, or by some
matter of record; and this could only be done after private
examination as to whether such conveyance was voluntarily
made; and our statutory mode, whereby the deed of a mar-
ried woman is executed and acknowledged, is but substitu-
tionary of the common law method in this regard. This
is the only change that our statute has wrought." [Whiteley
v. Stewart, 63 Mo. 360; Pearl v. Hervey, 70 Mo. loc. cit. 167;
Dameron v. Jameson, 71 Mo. 97; Rush v. Brown, 101 Mo.
586; Brown v. Dressler, 125 Mo. 589.]

It is true as argued by plaintiffs that a void deed executed by a married woman with regard to her land the title to which she holds in fee may be affirmed by her after she becomes discovert, but it must be done in writing and in the form prescribed by law. Her subsequent assent to it even after coverture, or her parol adoption of it, or expressions of a willingness by her to make it valid or a new deed, do not make it so. [Stewart on Husband and Wife, sec. 366; Adams v. Buford, 6 Dana 406.] To have such an effect it must be re-acknowledged and delivered.

In Price v. Hart, 29 Mo. 171, it was in effect said:   If such a deed can be adopted or set up by a mere parol declaration, made by a married woman after the removal of her disability of coverture, it would seem to let in all the evils which the statute was designed to guard against.

While these observations, and the authorities cited are more particularly with respect to the defective acknowledgment of deeds executed by married women than the misdescription of lands intended to be conveyed by them, the same rule applies with equal if not greater force to the latter class, that is, that a court of equity has no power to correct the mistake.

In Martin v. Hargardine, 46 Ill. loc. cit. 324, it was said: "Even if the certificate of acknowledgment had been correct in point of form, the court had power to apply it to any other lands than these described in the deed.   The difference between correcting a deed as to the husband, or, if he is dead, as to the heirs, and to the wife or widow, is this: as to the husband, the deed is made in execution of a contract between the grantor and grantee, and if it does not properly express the contract as really made, either as to the description of the lands or otherwise, it can be corrected by a court of chancery on the making of satisfactory proof.   So if the contract is executed on the part of his purchaser, by the payment or tender of the purchase money in compliance with its terms,

and the vendor refuses to convey, the court will compel a conveyance. But the wife is incapable of making a contract which will bind her as to her dower. She can relinquish it to the grantee of her husband, but only in the manner pointed out by the statute. The execution of a deed by signing, sealing and delivering it, is not sufficient, much less an agreement to execute a deed. The deed must not only be signed and sealed, but it must be acknowledged in a special manner, before an officer designated by the law, and a certificate must be placed by such officer upon the deed, showing such acknowledgment to have been made in the mode required by the statute. The character and effect of this transaction can not be changed by subsequent proof. If the deed describes the northeast quarter instead of the southeast, as was intended, and the wife executes and acknowledges the deed before the mistake is corrected, all that can be said is, that she has relinquished her dower in the lands described in the deed, and in none other, and although she may have agreed to relinquish it in another tract, and may have supposed she was doing so, yet, if she has not done so, the court has no power of compelling her. Her agreement does not bind her, and the court can not take her relinquishment of dower in one tract and apply it to another in which she never has relinquished. This would make for her a new deed."

It follows that the court was without authority to make the decree which it rendered.

It may be in an action of ejectment by defendant for the possession of the land (which if she does not bring voluntarily she may be compelled to do under the statute or be debarred from ever setting up or claiming title thereto) that by reason of the fact that she received from her husband the agreed consideration for her interest in the land, and having settled with the Grubb heirs upon that theory, and then having stood by and seen them making lasting and

valuable improvements thereon she would be estopped in ejectment from a recovery.

She is certainly not however entitled to recover possession of the land in this suit.

For these considerations we reverse the judgment. GANTT, P. J., and SHERWOOD, J., concur.